The Honorable, the Judges of the United States Court of Appeals for the Fourth Circuit. Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit are admonished to draw nigh and give their attention for the court is now sitting. God save the United States and this Honorable Court. Good morning. Good morning. Robinson, are you there? I'm here, Judge King. Good morning. May I introduce the court? Our case, our first case is Palozo v. Bayfield Loan Servicing. And Mr. Robinson, you're representing the appellate. Correct, Your Honor. You may proceed. Thank you. May I please the court? My name is Philip Robinson. I'm here on behalf of Appellant Ruben Palazzo. Mr. Palazzo is a former Chapter 13 borrower who had a longstanding dispute with the collection of his mortgage loan. In 2016, he commenced the bankruptcy proceeding to prevent the foreclosure of his home based on the disputed claims and sums claimed due by the appellees. And he successfully objected to their excessive proof of claim, which was materially reduced. However, following the proof of claim hearing, the appellees continued to seek categories of fees and sums for Mr. Palazzo that they were not entitled. They never- All right. And what's your best evidence that they, that appellees continue to collect fees from him? They continue, the point, Your Honor, is they continue to attempt to collect. Okay, even attempt. What's your best evidence that they even attempted to collect any debt? First, they've admitted in discovery, Your Honor, that they sent payoff statements that sought some- And did he request the, didn't appellant request the payoff statements that they sent twice? He did, Your Honor. And the payoff statements- And they responded by sending it? They responded by sending it and including- And now somehow that's their fault? Well, it's their fault, Your Honor, because those statements were inaccurate. Federal law does not permit inaccurate payoff statements. They're required, and we go through the briefing on this under the Truth in Lending Act, since the Dodd-Frank Act, those payoff statements were required to be accurate and they conceded. So to go back to Your Honor's question, they conceded that those statements were not accurate and included monies the court had disallowed. Wait, but my question, to go back to my question, was what is your best evidence that they attempted to collect a debt? The payoff statement, Your Honor, is an attempt to collect a debt when it asked for- The payoff statement was in response to, yeah, I thought you said the payoff statement was in to appellant twice requesting that statement. And also, I think the payoff statement disclaims that it's attempting to collect any debt, doesn't it? You're correct, Your Honor, and I'm assuming we'll get to the disclaimer issue. In addition to the payoff statements, which are required to be accurate, whether they're requested by a borrower or not, the appellees also sent periodic statements that identified fees and sums that they were not entitled to, categories of those, including foreclosure fees, attorney fees. Okay, so I think we're, so I at least am at the disclaimer part of the argument now. What is your best evidence that all of those disclaimers and all of those documents, some of which were in bold, some of which were in all caps, were not effective to disclaim that they were collecting a debt? Well, it's an excellent question, Your Honor, and this is the crux of the main issue in the case. We are not disputing that some statements, not all, had disclaimers. We are not disputing that there is case law that holds, as the court and the parties, the court knows and the parties put before it, that holds that a disclaimer is an exception. Our argument is, the first argument, legal argument is, under both federal and state law, there is no exception for debt collection when there's a disclaimer. But let me, Mr. Robertson, let me just ask the question, because I think it bears on this. The Truth in Lending Act requires there to be periodic statements. And doesn't that go against you to some extent when you say statements are sent? The issue that Judge Thacker keeps bringing up, and I want to hone in on that, because I think rather than just have an argument and we kind of already kind of figure out how we're going on, I really want to hear your take on this, because she goes to the heart of it. Is it an attempt to catch a debt, to collect a debt? Not a question of were there errors, were there inaccuracies on the statement, or were there things wrong with it? Or they sent me these statements when, as I just pointed out, I think the Truth in Lending Act requires at least the periodic statements to be, and he requested the payoff statement. So that's a pretty powerful argument against your position here, don't you think? On the surface, Judge, when I agree that it sounds like a powerful argument, and there is some older case law that goes that way, the Lameron case, which we cite in our opening brief, sort of addresses your Honor's point, I think. It talks about, yes, the Truth in Lending Act requires the periodic statements, and in our opening brief, I think toward the end of the last section, I detail the statutory and regulatory authority relating to what's included on a periodic statement. Nowhere in any of those statutory and regulatory requirements, though, are there inaccurate, and Lameron says, we see no, it ended on page 980 of that decision, we see no conflict in requiring the statements under the Truth in Lending Act to be truthful. So there is case law, more recent case law, I think, applying since Dodd-Frank, that the statements have to be accurate, and our point here is that those statements in and of themselves, to go back, I think, to... Let me interrupt just for a moment, so I understand your point. Sure. If these statements that were issued were accurate, then you would not have a claim in your view, is that correct? That's correct, there wouldn't have been any... So they can send a statement, your problem is they must be accurate, even though, and maybe you can point me, I don't think those statements say anywhere up there that it's attempting to collect a debt. Well, both the payoff statements and the periodic statements, I kind of want to address together on that point. So they do have... Some of them, not all of them, have disclaimers, but they also have the periodic statements, for example, have payoff payment coupons, pay these amounts, and they itemize what amounts are owed. The payoff statements say total amounts of pay, loan, and full. The statements, both of them disclose in certain places, both categories, disclose in certain places that they're coming from debt collectors. So this is where I think you have to look at both the payoff statements and the periodic statements in total, not in isolation. Not one little disclaimer says controls the whole thing, and that's where the Daniels case, also from the 11th Circuit, so it's only persuasive in this court, just like Lamerin. So let me bring up another point, because I want you to address this too. I mean, this is not a Truth in Lending Act type claim, as I understand it. These are for an automatic stay and the Federal Debt Collection Protection Act type. Is there something in those acts that require accuracy? The truth... Well, yes. Even though we're distinguishing and arguing that the court doesn't need to follow Lovegrove, in preparation for oral argument, I saw footnote six, and although I suppose that's dicta, at footnote six in Lovegrove, it says, such communications, if they're in connection with the collection of a debt, must simply comply with the FDCPA. For example, they must not be false, deceptive, or misleading. So including information about foreclosure, including information about attorney fees that have never been approved by the bankruptcy court in the bankruptcy plan, we think that those are unfair and deceptive, so they would trigger both the automatic stay and also the FDCPA and the state debt collection claims that flow... Regardless of the disclaimers? Is that what I heard you say earlier? That even though there are disclaimers, it doesn't matter based on your truth in lending argument? Looking at it in the total, yes, Your Honor. And looking at it in the total, I heard you say a couple of times that not all of these documents had disclaimers, but the two payoff statements that were requested by appellant, both of those contained the disclaimer language, didn't they? They did, and I believe most of the periodic statements did. The two form 1098s that, for some unknown reason, they... The tax form? The tax form? Correct. How is a tax form an attempt by appellee to collect a debt from appellant? Well, because, Your Honor, in viewing it in total, the whole circumstances here, going into bankruptcy, successfully objecting to a proof of claim, receiving statements that are demanding monies that are not owed, after this action commenced... But with disclaimers, with disclaimers. In looking at everything, I mean, I have to look at the disclaimers that... Maybe you can point me to one of these that did not contain a disclaimer. I haven't seen it. And also, don't we assume that appellant... That in our case law, assume that appellant can and did read the documents? There is... Well, to answer the last question, Your Honor, there is some case law of the duty to read. I think it's generally described. And so, yes. But to go back to the prior question, I hadn't completed my answer on the form 1098s. Looking at the totality of the circumstances, the 1098s didn't include, Your Honor, just tax information. They also included pages and pages and itemizations, and they're in the record, and we've cited them and highlighted them, of fees and sums that were not owed by Mr. Palazzo. But for some reason, they sent them to him. Their answer under oath was they sent them to him as a courtesy. In the record, we provided another 1098 that the court is well aware of from its own personal experiences and I am, that included no such other fees and sums. So looking at it from the least sophisticated consumer perspective, with no disclaimers, we think those form 1098s, including $43,000 and change and $133,000 and change for litigation fees, property inspection fees, foreclosure costs that were never authorized by the bankruptcy court, that gives the inference that... You're sort of skipping a couple steps when you talk about the least sophisticated consumer, though, aren't you? I mean, you have to... We have to find that it's false, misleading, or deceptive in violation of the Act before we go to the viewpoint of the least sophisticated consumer, don't we? I'm not sure the sequencing... And I don't disagree with your honor on the premise that you're providing that you still have to find a violation of the Act. And we think that we've cited a bunch of authorities from this court, the Coons case, the Guthrie case, which they don't respond to at all, so they essentially concede. In the Coons case, isn't there a distinguishing factor there in as much as in Coons they actually did attempt to get a fee? It was not much, like $23 or something. Isn't that a distinguishing factor in Coons? Although I take your point with regard to Coons otherwise. Well, I don't think that's distinguishing here when the attempt here was to collect thousands of dollars and they've conceded. They're managing agent for bankruptcy who had personal knowledge. Mr. Robinson? Yes, sir. Coons, that's where you're hanging your hat? Well, I believe it's a good question, your honor. I believe Coons and Guthrie and Alexander control because their reported decisions more than Lovegrove. The district court relied, and the appellees relied, and the appellees argued to this court that Lovegrove controls, but that was an unreported decision. Do you think Lovegrove is distinguishable, or you say Lovegrove doesn't count because it's unpublished? Well, I think we went through in our briefing, your honor, to distinguish it. It's a different fact pattern. Here we have a case that's not filed after the conclusion of a bankruptcy. This action was filed during the bankruptcy, and Mr. Palazzo identified on his petition, pre-petition claims, which reverted to him, and then we also have post-petition claims that all arose during the bankruptcy. So it's a little different in that context, but I do think the reported decisions that discuss some of these issues, and Coons talks about the obligation for Mr. Palazzo continues, inciting the Supreme Court case in Johnson, and we incited that in our opening brief, and the Coons case does say that there's some disclaimers, but it sort of follows and parallels the Daniels decision that said, sometimes the communication might have a dual purpose. Sometimes it might be for information, and sometimes it might also be for debt collection. Coons recognized an exception also in North Carolina law that if you're just providing an updated account summary, that's not then subject to the North Carolina Debt Collection Act. That exception doesn't exist here under either the FDCPA or the MCDCA, the Maryland Debt Collection Act. So I think Coons is pretty illustrative. I'm not arguing that any of these cases are on all fours, but I do think they're much more persuasive, and the reported decisions are sort of binding here. Any collection attempt, any act, the automatic stay claims rise and fall on any act. Here we've shown acts, and the Alexander case defines and explains what the Supreme Court precedent, and this court's precedent is on the definition of any. It's pretty broad. Same thing for FDCPA and the MCDCA. We don't have a one-off where this happened just for a few days after that evidentiary hearing where their claim was denied and reduced. We have a situation where this has gone on for years, and it included not only these statements, but also, to go back to I think Judge Thacker's comment on what other conduct is there, Mr. Palazzo made a payment in October of 2022, I believe. He's never given credit for it. His loan transferred to another from Bayview. He was never told about that from Bayview or the other until long after the fact. Bayview provided false information to the new servicer, Right Path. We detail this in our brief. They had to roll off all the fees and charges that were transmitted when the loan transferred, and so we think that this is sort of on all fours. But the ultimate question here, and I just have a few seconds left in my opening, is whether or not there was enough evidence for a reasonable jury to return a favorable verdict. Mr. Palazzo, I can't see the clock, so you're on the honor system. I trust these lawyers. As long as you get questions from a judge, you answer them. Go ahead. My time ran out in that statement, Your Honor. Very good. You have some reserve. Thank you. Ms. Jefferson? Good morning, Your Honors. Good morning, Ms. Jefferson. Good to have you with us. Good to be here, even if remotely. Go right ahead. Thank you. Good morning. May it please the court. This appeal of the two district court orders, in our view, can be affirmed on three straightforward grounds. First, count one was forfeited by the appellant in his appeal brief. That's the appeal of the order on the contempt finding regarding section 1327. On counts two and four, the challenged statements that are requested payoffs and the form 1098 were informational, not acts to collect. I will be addressing the appeal of the first district court order, which covered counts one and two, the bankruptcy code claims. My co-counsel, Brad Bernstein, will address the appeal of the second district court order covering count four. Your Honors, to jump right into it, count two is the claim that the appellees violated the automatic stay by sending three categories of statements here. Those categories of statements are monthly statements, payoff statements, and the tax form 1098. And I think appellants fundamentally misunderstand how section 362 works. We heard in Mr. Robinson's opening argument that had the statements been accurate, there would not be a claim. That is, I think, conclusive of the argument on section 362 because the bankruptcy code draws no distinction between accuracy or inaccuracy. For purposes of the stay violation, the only question is whether it was an effort to collect, assess, or recover a claim against the debtor that arose before the commencement of the case. Fair enough, fair enough. But let me ask the question regarding those monthly statements because there are some auditors here in terms of what's being put forth. That is, the monthly statement did have, I guess, before it went over to Bayview, it had an amount of $1,450 on it, and then it changed to $1,549 or so on the payment statement. What was that about? Well, Your Honor, the claim for the $1,450 was a post-petition amount that Bayview ultimately wrote off. But for purposes of the automatic stay analysis, the fact that those are amounts that relate to post... Let's assume these statements were for the pre-, for post-petition debts were attempted to do that. Talk about our decision in Anderson. Certainly, Your Honor. Well, if the amounts were all pre-petition, then it would still not be a stay violation for several reasons. First, the statements themselves all had very clear disclaimers. They also... Well, Mr. Robinson said several times that not all of them had disclaimers. I thought they all did. What's your response to that? Maybe he can identify in rebuttal which ones did not have disclaimers. I'm not aware of statements that didn't have disclaimers after the bankruptcy was filed. But I would also note... Well, you didn't have one on the 1098, did you? There was no disclaimer on the 1098, but the Form 1098 is a backward-looking annual statement that includes tax-related information that can't possibly be an attempt to collect a debt because it's just reflective of amounts that were assessed in the past. The First Circuit's decision in Reynolds clearly explains that a tax statement, a 1098, is an informative document sent in the normal course of business that contains data a debtor needs to prepare tax returns. I think that's pretty much the general law on it, but I'll tell you something mighty odd about those attorney fees up there. Tell me about those attorney fees. They look like they would be pre-petition debts, and at least for the automatic stay, they must be pre-petition debts. But what are those fees about? It's almost as much as a loan on it when you look at it. It's a strange animal that you put at the bottom of that. Well, Your Honor, conceding that we weren't counsel at the time and so I can't speak with personal knowledge as to the fees themselves, what I can say is that presuming that those fees, for the sake of argument, were... I'm trying to understand what that means. You weren't counsel at the time. I'm just asking about those fees up there. You're counsel on that statement now. No, no, I understand. I want to know what those fees are. I just had never seen anything like that. That was strange at the bottom. And where did it come from? It would scare the dickens out of just about any debtor out there that would see that at the bottom of a statement. 1098, I grant the 1098. You know, I'm with you at the general basis of that. That's really... It's really considered to be informational, but when you attack that at the end of it, it at least bears some... Well, now that I have you before me, at least some kind of indication of why is it there? So, lenders are required in a Form 1098 to report all fees that they incurred and agreeing that the fees were large. As Mr. Robinson said, there was a long history of disputes between these parties and whether or not those fees were being collected or sought to be collected again. So, you weren't the lawyer who got all that money there, I take it? I was not, Your Honor. You think some lawyer was paid that amount of money for what has gone on in this case? Your Honor, I can't believe it. I mean, that sounds absurd to me. I don't know whether those amounts were actually paid, but I would note that the district court, maybe factual finding, in each of the monthly statements, whether or not the categories of the fees were accurate, the total amount of the pre-petitioner rearage, the $11,800 and some dollars, which is the amount that the bankruptcy court permitted by his order after the objection on the proof of claim, was never incorrect. The total amount of pre-petitioner rearages was always accurate. And I would also point, Your Honors, for purposes of the automatic stay question, that the local bankruptcy rule is quite instructive in this case. In the bankruptcy courts for Maryland, there is a local rule at the time that the district court entered its order. It was local rule 4001-5. It was since amended to 4001-6, but the language of the rule didn't change. And that language provides that creditors and lessors may continue to provide customary notices and correspondence, including monthly statements, payment coupons, escrow adjustment analyses, and tax statements to debtors. Yes, I want to just ask just for, maybe for clarity in terms of where you're going with that. And I get there's a local rule, but his claims arise statutory claims. He says that you are attempting to collect a debt, whether it is there or not is a question. Is there anything that a local rule can do to change that statute? The local rule can't modify the statute, but federal courts under 28 U.S.C. Section 2071 do have the authority to create and promulgate local rules as long as they don't conflict with federal statutes. And there's a- That's the key. That's the key. As long as they don't conflict. His claims are clearly that this thing here says it's collecting a debt. My question is, what can a local rule do that wouldn't conflict with that if in fact it is attempting to collect a debt? Well, Your Honor, to the extent that the documents were an attempt to collect a pre-petition debt- But the answer to my question, and I know I'm beating you into it, is really they can't do anything to change that. The tenor of the statute, that's where I'm going. I wasn't trying to beat you into saying something there, but I think that's pretty clear. And I only went there because you want to go with these local rules, and I'm not sure how much of an impact they have, other than to give you some guidance on how they can do it and what they can do. But it's really the case law on the statute that controls here. Yes, Your Honor, local rules can't conflict with or modify a statute, although I don't believe there's been a challenge by Mr. Robin to the efficacy of the local rule. But I raise it to point out that the court itself provides guidance that there is good reason for lenders to be providing these statements, particularly in a Chapter 13 case, which I think we have to distinguish from a number of the cases that Mr. Robinson relies on that are Chapter 7 cases. In a Chapter 13 case, where a debtor elects to make plan payments outside of a plan and retain property, the mortgage debt is not discharged. The pre-petitioner rearages, but they need information in order to continue making their payments going forward. And I'm not a client. You've answered my question. Judge King said he can't see the clock, but I want to just let you know you answered mine and I understand Judge Bernstein has 10 minutes, but I'll leave it to Judge King as to whether to go further. Your time's up. My time is up. Mr. Bernstein. Thank you, Your Honor. It may please the court. I will be discussing the district court's decision as it relates to count four of the amended complaint, specifically whether there was an attempt to collect the debt under the Fair Debt Collection Practices Act. The district court's decision should be affirmed. The district court correctly determined on an undisputed record that there was no attempt to collect the debt. The district court applied this circuit's common sense inquiry standard and reviewed each document cited by Mr. Palazzo and determined that each document was informational and non-threatening. And all those documents, save for the 1098s, included a disclaimer that notified Mr. Palazzo that the statements were not an attempt to collect a debt and were for informational purposes only. You know, it seems like the question here that Mr. Robertson is bringing up, maybe it's close and not more on the mortgage statement than the rest of them, I would think, in terms of whether it's an attempt, is it's the old debt thing. You can say it's not what it is, it's not an attempt or whatever, but if it's got figures and amounts up there, and I don't know what that payoff statement, the 1098 form goes with those excessive fees for at least the fees that are indicated for the lawyers and what that means. But his point is, as I understand it, is it may not say directly this, but that's exactly what it's doing when it's putting up inaccurate figures there and fees on this statement. So how do you address that? It may be rather novel for us to even go in this direction because I'm not sure case has gone as far as what he's asking us to do, but at least the argument is worth discussing. Well, that's a good question, Your Honor. And I think the district court acknowledged that just because a statement says it's not an attempt to collect the debt, that it could still be an attempt to collect the debt. And so the court looked at each document, the monthly statements and the payoff statements, and observed that there was no threatening language to pay a debt. Focus on that mortgage statement, at least from my perspective. I'm pretty much there. I'm not there, I wouldn't say completely, but he asked for that payoff statement. And the 1098 is a whole different character, but there seems to be some closeness on the mortgage statement there that's in terms of what was there. So focus on that. Sure. The district court found that, and I don't want to get into that, that the payoffs, the monthly statements did fall within the purview of the local bankruptcy rule. But they found that the statements, when looking at the statements, not only did they include a very clear and concise- Not to interrupt you there, but it's the local statement, but did the Truth in Lending Act require such a statement? I don't know if the Truth in Lending Act requires, I think it does require a statement, but in Mr. Plazo's bankruptcy plan, he was going to continue making his regular payments going forward to the lender. And so- It would be, it seems like to me it favors you quite a bit if the Truth in Lending Act, which it looks to me it does, requires that statement be sent. More so than a local rule. I mean, it seems to be a pretty powerful statement. But I'll leave it to you as to whether your interpretation is that it requires them or not. I just looked at it and thought, looks like to me the Truth in Lending Act required them to send those statements. Now the accuracy of it is another question. And maybe that's where it pulses out here. Does it have to be accurate? The question, at least from his perspective, that makes it an attempt to collect the debt. And that seems to be a little leap to me, but comment on that. Sure. And I agree with your honor. It is a leap. The Truth in Lending Act requires that the monthly statements be accurate and the monthly statements were accurate. But even if they were inaccurate, the monthly statements, the fact that they are inaccurate doesn't mean that the monthly statements were an attempt to collect a debt. And that is what Mr. Palazzo was alleging here, that the monthly statements along with the payoff statements were an attempt to collect a debt under the Fair Debt Collection Practices Act. A violation or a potential violation of the Truth in Lending Act doesn't transform it into a violation of the Fair Debt Collection Practices Act. What about the Coons case? That does seem to have some similarities with the case here, as Mr. Robinson argues it. It had a disclaimer as well. Yes. And I think the Coons case can also be distinguished from the facts here. And the court in its decision in Coons addressed the differences between the facts in Coons and the facts in Lovegrove. For starters, unlike Coons, where the district court granted the lender's motion to dismiss, the governing legal standard here is not the same. Here, the district court granted our motion for summary judgment, as was the case in Lovegrove. Second, the letters at issue in Coons are significantly different than the letters that were sent to Mr. Palazzo. And in the Coons case, while the letters indicated that they were not and should not be construed to be an attempt to collect a debt as to Mr. Coons' personal liability, they went on to state that they were a step in the enforcement of a mortgage lien against his property. Here, the letters said nothing about the mortgage lien surviving bankruptcy. They didn't mention foreclosure. But instead, like the case in Lovegrove, advised that they were for informational purposes only. In fact, the district court... Don't you, Mr. Bernstein? I'm sorry. You like the Lovegrove case. You want us to follow that, right? Yes, Your Honor. I think the Lovegrove decision is on all fours. Do you think Coons is distinguishable? But Coons is published, and it's precedent. And Lovegrove is unpublished. It's not precedent. That's correct. But I think there are factual differences. But that hurdle, and that's a pretty big hurdle. Yes, Your Honor. I do agree. And there's no dispute that the Lovegrove case is unpublished and the Coons case is published. But we do believe that the Lovegrove case, as the district court found, was very persuasive. Certainly more all square on the facts than an issue with Lovegrove. In fact, the district court found that the language in Begue's monthly statements make the point more clearly than some of the communications in Lovegrove. The disclaimer... Is it an apples to apples comparison when, as I recall, Coons is a Chapter 7 liquidation case. This is a 13 bankruptcy where there's ongoing payments and that sort of thing on it. And bankruptcy always does cause us to pause and dig a little deeper on these things. But that seems to me to be the distinction when you're thinking about the tenor. I mean, the Coons case is somewhat different. It was a more aggressive way of collecting a debt, I think, for someone who was just making some ongoing payments in a Chapter 13 type thing. So does that make a distinction whether or not it's a Chapter 7 versus Chapter 13? Your Honor, that's why I have my colleague, Ms. Jefferson, to talk about the differences between Chapter 7 and Chapter 13. I don't know if they really make a difference. I think the differences between Coons in this case is... In Coons, the Fourth Circuit was looking at it from a motion-to-dismiss standard. And the letters in Coons sort of went a bit further because they also said that they were a step in the enforcement of a mortgage lien against your property. In the beginning part of the Coons case, the Court was talking about how foreclosing is a step in enforcement of, you know, that it was a collection activity. Here, the letters that Bayview sent don't say anything about taking a next step or taking any action if you don't pay. And that's why the District Court, when they looked at all of the statements, the monthly statements, the payoff statements, and the 1098 forms, they looked at it under the common-sense inquiry and determined as a whole that the statements were informational based on the text, the context, as well as the disclaimers. And especially with the payoff quotes, that they were only provided based on the request from Mr. Palazzo, even more consideration to show that these were being sent to him simply for informational purposes and not in an attempt to collect a debt. I see my time is about up, so, Your Honor, I'll just wrap up by saying that we request that the decision of the District Court be affirmed. Thank you. Very good, Mr. Bernstein. Thank you very much. Mr. Robinson, do you have some time? Yes, Your Honors. I pulled up one statement for illustrative purposes at JA-414. This one was from M&T. Within that statement, all of the periodic statements, to the best of my knowledge, included some form or another of a disclaimer. I want to be clear about that. I'm not arguing otherwise. However, they also saw my argument as other sums, and this statement is illustrative of that problem. In the transaction activity, which is supposed to be... Okay, so I just want to make sure I understand what you just said. You do concede that all of these things contain some form of disclaimer, but your primary argument about them is that they were inaccurate. Is that correct? And they also seek to collect. They do both things, Your Honor. They are for informational purposes only. They have a disclaimer to that effect, but they also seek to collect at the same time. At JA-414, M&T provides Mr. Palazzo a periodic statement that itemizes foreclosure attorney fees. And as the Coons case held, foreclosure equals debt collection. Mr. Palazzo has a long history on this loan. They deposed him for a long time about a prior foreclosure and how that impacted him. That's what, from the least sophisticated consumer, he has a duty to read. He reads that, and you can see in the family testimony that's at JA-1529-1554, which they don't dispute. They didn't depose any of those witnesses. How all of this affected Mr. Palazzo and created, you know, emotional distress damage. To, I think, Judge Winnan, you asked about the Truth in Lending Act requirement for periodic statements. I just want to be candid with the court. There was a period of time in the 2010s where the CFPB said that statements did not need to be sent to borrowers who were in bankruptcy. I don't believe that period of time covers the claims that are in this action. So you'll see some older cases that might address that. I just raised that in candor to the court.  Is there a private right of action for a Truth in Lending Act type claim? Against original creditors. The way the private right of action provision in TILA is written, you can bring an action against original creditors. So what the case law has developed in the Daniels case, the Lemonard case, and other cases, TAB, I think, Coons, Guthrie, in this court, is that you use those violations of activities that might be governed under conduct governed under Truth in Lending Act when they trip up the FDCPA, the MCDCA, and in this case, the automatic stay. I have a minute left. I want to address the two other issues raised by Ms. Jefferson. The local rules, we did address in our reply brief at 10 and 11, and explained pretty clearly there why they do not control and they can't create an exception or a safe harbor for the defendants. And I think it wasn't cited in the papers, but just because I know at the Zen Nails case, addressed other local rules from the U.S. District Court recently and described some of that. The other, on the automatic stay claims, the automatic stay applies, the relationship here between the appellees and Mr. Palazzo was pre-petition. It's a mortgage relationship that arose pre-petition. All of the efforts to collect, whether it was pre or post petition, in this case, all arise or fall from that pre-petition mortgage relationship. And we think pretty clearly we've cited all the case law that this sort of conduct is governed by the automatic stay. And with that, we'd ask the court to reverse, and I appreciate the court's indulgence in allowing us to do remote argument and for the clerk's assistance in setting this up. Thank you very much, Mr. Robinson. We appreciate your argument. As well as those of your colleagues, Mr. Jefferson and Mr. Bernstein. We'll take the matter under advisement.
judges: Robert B. King, James Andrew Wynn, Stephanie D. Thacker